# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

FILED
CLERK, U.S. DISTRICT COURT

JUN 27, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

~~Alexander Baker,~~

~~Plaintiff,~~

~~v.~~

~~16-cv-08931 VAP (JPRx)~~

~~FirstCom Music, a Unit of~~

~~Universal Music Z-tones, LLC, et~~

~~al.,~~

~~Defendants.~~

---

Clara Veseliza Baker, a.k.a. Clair Marlo,

Counterclaimant,

v.

Alexander Baker

Counter-Defendant.

16-cv-08931 VAP (JPRx)

**MEMORANDUM OPINION AND FINDINGS OF FACT & CONLUSIONS OF LAW [Fed. R. CIV. PROC. 52]**

Counter-claimant Clara Veseliza Baker, a.k.a. Clair Marlo ("Marlo") counterclaim[1] against Counter-defendant Alexander C. Baker ("Baker") for

---

[1] In his opening statement at trial, Marlo's counsel indicated that she was withdrawing any claim regarding the compositions listed in a January 17, 2013 contract. (See Ex. 117).  The compositions listed in this exhibit became part of "That 70s Record" a.k.a. "The '70s Mix Tape," for which Baker has been declared the author. See Baker v. Marlo, No. 16-cv-2313 RGK (JPRx), 2016 WL 10677597, at *5 (C.D. Cal. Sept. 22, 2016), aff'd, 698 F. App'x 381 (9th Cir. 2017).

relief under the Declaratory Judgment Act was tried to the Court on May 22, 2018; Marlo timely filed a post-trial brief on May 29, 2018, Baker filed an untimely brief on June 1, 2018, and the Court then took the matter under submission.[2]  Having considered all the evidence admitted at trial and the

---

[2]In his Complaint filed on December 2, 2016, Baker alleged ten claims: (1) Violations of RICO (against Defendants FirstCom Music, a Unit of Universal Music-Z Tones, LLC ("FirstCom"), Ken Nelson ("Nelson"), Jenifer Carpenter ("Carpenter" and collectively "FirstCom Defendants") and Marlo); (2) Conspiracy to Violate RICO (against FirstCom Defendants and Marlo); (3) Breach of Fiduciary Duty (against FirstCom and Nelson); (4) Copyright Infringement (against Defendants Children's Network, LLC a.k.a Sprout ("Sprout") and Johnson & Murphy Productions, LLC ("Johnson & Murphy")); (5) Copyright Infringement (against Firstcom, Nelson, and Marlo); (6) Fraud (against FirstCom, Nelson, and Marlo); (7) Fraud (against Marlo); (8) Fraud (against FirstCom Defendants and Marlo); (9) Conversion of Invisible Hand Productions (against Marlo); and (10) Conversion of Baker's Life's Work (against Marlo).  On December 22, 2017, Baker filed a notice of dismissal as to Defendant Johnson & Murphy.  (Doc. No. 250.)

In their answers, FirstCom and Marlo asserted counterclaims against Baker. FirstCom asserted counterclaims for (1) declaratory judgment, (2) slander of title, (3) commercial disparagement, and (4) civil extortion.  (Doc. No. 26 at ¶¶398-424.) Marlo asserted counterclaims for (1) declaratory judgment, (2) commercial disparagement, and (3) civil extortion.  (Doc. No. 37 at ¶¶ 406-32.)

On July 27, 2017, the Court granted Baker's Anti-SLAPP Motion against FirstCom's counterclaim for slander of title and granted Baker's Motion to Dismiss FirstCom's counterclaim for commercial disparagement with leave to amend. (Doc. No. 82 at 30.)  The Court also granted Baker's Motion to Dismiss Marlo's counterclaim for commercial disparagement with leave to amend.  (Id.)  FirstCom re-pleaded its commercial disparagement counterclaim in its First Amended Counterclaims. (Doc. No. 95.)  Marlo did not amend and replead her counterclaim for commercial disparagement in her First Amended Counterclaim.  (Doc. No. 89.)

On March 15, 2018, the Court granted summary judgment in favor of the FirstCom Defendants, Marlo and Sprout, dismissing Baker's first, second, third, fourth, fifth, sixth, and ninth claims.  (Doc. No. 292.)  On March 27, 2018, the Court granted summary judgment in favor of FirstCom as to Baker's liability on FirstCom's third counterclaim for civil extortion, and in favor of Marlo on the issue of Baker's liability on Marlo's second counterclaim for civil extortion.  (Doc. No. 295.)

briefing submitted by the parties, the Court issues the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, and issues its decision below.

## I.    FINDINGS OF FACT

1.    Marlo and Baker met in 1993.  At some point thereafter, they began working together as songwriters and producers.  They married in 1995.

2.    At the time she met Baker, Marlo had published and recorded approximately 180 songs, written music for films, and worked for Muzak as an arranger/composer.  (See Exs. 724-731.)  When the couple met, Baker had a background in performing music with various musical groups.  He described his musical composition efforts as limited to a few advertising jingles in the 1980s, and work arranging and producing music tracks for unnamed clients.

3.    In 1995, Marlo and Baker formed Invisible Hand Productions ("IHP") to compose production music.  Marlo's contacts in the industry led to an introduction to Kenneth Nelson, a senior

_____

On April 17, 2018, the Court granted the parties' stipulation that the entire action be dismissed as to the FirstCom Defendants and Sprout.  (Doc. No. 307.)  The Court dismissed with prejudice all of Baker's claims against FirstCom Defendants and Sprout as well as all of FirstCom's counterclaims against Baker.  (Id.)

On May 8, 2018, the Court declined to exercise supplemental jurisdiction over the remaining state law claims and counterclaims, and dismissed Baker's seventh, eighth, and tenth claims and Marlo's counterclaim for civil extortion without preju-dice to re-filing in Superior Court.  (Doc. No. 329.)

executive at Firstcom Music.[3]  Marlo presented ideas to FirstCom in the form of lists of what music and which artists were popular.

4. Beginning in 1996, IHP entered into work-for-hire contracts with FirstCom, under which FirstCom paid IHP to compose and produce music; IHP assigned its copyright interest in the music to FirstCom; and FirstCom paid a writer's share as indicated on the schedules to the respective contracts.  (See Exs. 10-1, 10-2, 10-8, 101-117.)

5. At times, Marlo and Baker, doing business as IHP, used other artists to compose lyrics or do other work on the music-for-hire. The song splits, i.e., the amounts attributable to each artist for purposes of calculating royalties, were determined by Marlo, who then reported them to FirstCom.

6. For the "Happy Songs" project in 2005, the song splits were registered as 70% to Marlo and 30% to Baker, mistakenly omitting attributions to other artists who had contributed.

7. When this error was brought to Marlo's attention, she attempted to correct it by contacting FirstCom and the contributing artists. FirstCom ultimately declined to make any changes in the song splits because Baker had filed suit against FirstCom.

8. If it had been corrected, the list of song splits for the "Happy Songs" project would have been 70%/30% when Marlo and Baker were the only contributing artists; 33-1/3%, 33-1/3%, 33-1/3%

---

[3]  FirstCom is a "production music" company that acquires rights to recorded music pieces and licenses them for use on television and in other media.  (Doc. No. 1, ¶ 20).

1    when Marlo, Baker, and another artist contributed; and 25% each

2    when Marlo, Baker, and two other artists contributed.

9.   Leaving aside the musical compositions comprising the "Happy

Songs" project, the other song splits at issue in this action all

credit Marlo as either the sole artist or one of the contributing

artists.  (Ex. 722.)[4]   Other than the compositions included in the

"Happy Songs" and "That 70's Record/70's Mix Tape" projects,

Court finds the registered splits for writer credits among Marlo,

Baker and other artists for the works listed in Exhibit 722 are

accurate, for the following reasons.

10.  Marlo testified credibly that at the beginning of their relationship,

she and Baker each contributed equally to the works, but this

changed over time.

11.  It is undisputed that Baker underwent electro-thoracic surgery

("ETS") in 2002.  (Ex. 720 at 44.)  Post surgery, according to

Marlo, Baker began to spend less time working on their music

production business as he became involved in medical and legal

malpractice litigation, writing a book about the surgery, and

researching the effects of the operation.  (See Ex. 131-1 at 6.)

12.  After undergoing the surgery, Baker filed a number of lawsuits

where he alleged the surgery had caused him to be unable to

engage in his work composing and producing music.  (See Ex.

720 at 44, 46, 47, 58, 88.)  In one suit filed in October, 2005

---

[4] Marlo's counterclaim for declaratory relief sought a judicial declaration as to the proper attribution for the compositions attached as Appendix B to Baker's complaint.  Trial Exhibit 722 is a copy of Appendix B.

against his physicians, Baker alleged he had "experienced permanent physical and mental injuries as a direct result of the actions of the defendants." (Ex. 720 at 125.) He travelled for weeks at a time for testing in connection with the surgery and its claimed after-effects.

13. Baker made the same claim that the surgery left him disabled and incapable of composing music in a message dated March 27, 2004, to Carole Edward, writing that in a number of ways, he was not able to write music as he could before the surgery, and that his fingertips were so "slippery that they constantly slip[ped] off the right note and on to the wrong one." (Ex. 714 at 1.)

14. In addition to time spent on litigation, Baker spent time online on message boards and blogs attempting to contact others who had had the same surgery. He spent time on a website he created regarding the September 11, 2001 terrorist attacks on the World Trade Center. He made a 13 hour movie on that subject and spent time producing videos on the same topic. (Ex. 131-1 at 73-74 [Response to Interrogatory No. 4].)

15. Marlo testified credibly that Baker spent approximately 90% of his time on these activities, and only 10% of his time on composing and producing music. Moreover, Baker's inattention and excessive marijuana use caused the quality of his work to suffer, to the point where FirstCom rejected at least one of the pieces he worked on.

16. By 2006, Baker was using marijuana heavily, and by 2010 he was using it from the beginning of the day until late at night. On April

21, 2012, he wrote to John Putch, a film director with whom he was working, saying he was going to enter a rehabilitation program because he was "stoned from 7 a.m. til midnight everyday with nothing much accomplished except smoking more pot. I'm tired, disorganized, forgetful and relatively useless . . . . I'm out of control and have signed up for rehab." (Ex. 721.) He entered a rehabilitation program in 2012 for 30 days, but began using marijuana again in 2013.

17. Baker testified that he wrote the message to Putch because Marlo "made him," by threatening to divorce him and cut off his access to their children. It was Baker, however, who filed for dissolution of the marriage. He admitted that he did enter a rehabilitation program for substance abuse, but again stated he did so because of Marlo's "threats" that unless he entered a drug rehabilitation program, he would have to leave the family residence and would not have access to his children. Furthermore, Baker admitted that in 2006 he was involuntarily hospitalized in a psychiatric facility pursuant to Cal. Welf. & Inst. Code § 5150, after he checked into a hospital emergency room for a "tummy ache." He claimed the medical staff misunderstood him after he described to them a suicide in the plot of a movie he was working on.

18. According to Marlo's uncontradicted testimony, Baker also became "addicted to" prescription drugs, including Neurontin (an anticonvulsant used to treat types of pain) and Ativan (a drug used to treat anxiety.)

19. Baker contended that he did most or all of the work on the compositions for which IHP had contracted with FirstCom. He offered as proof of this the testimony of Billy Trudel. Although Trudel testified that he should have been credited for work he did on four compositions in the "Happy Songs" project – a point on which there was no dispute, see ¶ 6 above – when asked by Baker whether it was true that Marlo had not contributed artistically to any of the music, Trudel declined to so testify. In light of the extensive evidence described above of Baker's excessive marijuana use, time spent in drug rehabilitation and psychiatric facilities, disability following the ETS, and extensive involvement with other interests, the Court finds not credible his testimony that he created most or all of the musical compositions at issue.

20. The evidence at trial established that when Marlo and Baker began working together to compose and produce production music for FirstCom, they agreed the song splits should reflect their equal contributions. The parties' respective contributions varied and changed over time. At times other artists contributed, and this was reflected in the registered song splits. After 2002, when Baker underwent ETS, became involved in numerous lawsuits, began using marijuana extensively to the point of total impairment, and pursued other interests such as theories about the September 11, 2001 terrorist attacks, his involvement in the work for FirstCom dwindled to the point where Marlo was solely producing the works.

21. Marlo's trial testimony that the registered song splits reflected on Exhibit 722 were accurate is supported by her credible testimony on the subject. It was further supported by other evidence, including Baker's messages to third parties stating that he was no longer able to produce music and was using marijuana so heavily that he was constantly impaired; his allegations in other lawsuits that the ETS had permanently impaired or destroyed his ability to create music; his entry into a residential rehabilitation program for substance abuse; and his involuntary commitment to a psychiatric treatment facility pursuant to Cal. Welf. & Inst. Code § 5150. Baker's testimony that he contributed at least 50% to all of the works, and that some of the works were exclusively his, was belied by the evidence cited above. His attempts to discredit the evidence by claiming, for example, that Marlo "forced" him to write the message admitting his abuse of marijuana and his need for rehabilitation, were not credible.

22. Moreover, Baker presented no evidence rebutting the testimony that he devoted a great deal of time to matters other than music production; in fact, he admitted that he wrote at least two books, produced a 13 hour movie on the September 11 terrorist attacks, and produced other films or videos. He admitted his heavy use of marijuana. He admitted filing the lawsuits alleging a permanent disability preventing him from composing and producing music.

//

//

//

## II. CONCLUSIONS OF LAW

**A. Jurisdiction**

1. This Court has jurisdiction under 28 U.S.C. §§ 1331, 2210 and 17 U.S.C. § 101 et seq. as the First Count in the First Amended Counterclaim ("FACC") seeks a judicial declaration that splits for writer credits among Marlo, Baker and any other artists involved were appropriately reported to FirstCom. (FACC ¶ 7.) In particular, Marlo seeks a finding that the registered splits for writer credits among Marlo, Baker and other artists for the works listed in Exhibit 722 are true and correct. (Id., ¶ 8.) At trial, Marlo amended this request for relief to exclude the compositions listed on Exhibit 722 that were the subject of the judgment in Baker v. Marlo, No. 16-cv-2313 RGK (JPRx), 2016 WL 10677597, at *5 (C.D. Cal. Sept. 22, 2016), aff'd, 698 F. App'x 381 (9th Cir. 2017).

2. The Ninth Circuit has described three situations where a claim may be found to arise under the federal copyright laws: (1) if the complaint is for a remedy expressly granted by the Copyright Act; (2) if the claim requires construction of the Copyright Act; or (3) where a distinctive policy of the Copyright Act requires that federal principles control the outcome. Vestron, Inc. v. Home Box Office, Inc., 839 F.2d 1380, 1381 (9th Cir. 1988). "If any of these three grounds is satisfied, the federal courts have jurisdiction." Id. Here, Marlo's counterclaim seeks a determination of the correct attribution of authorship as to each of the compositions listed in Appendix B to Baker's complaint (Exhibit 722). (Doc. No. 89 at

¶¶3-14).  As Marlo is seeking to establish rights by virtue of her status as a co-author of a joint work, her claim requires construction of the Copyright Act.  See Merchant v. Levy, 92 F.3d 51, 55 (2d Cir. 1996) ("[C]opyright ownership by reason of one's status as a co-author of a joint work arises directly from the terms of the Copyright Act itself. Because disposition of this case involves the application and interpretation of the copyright ownership provisions federal jurisdiction is proper.") (internal quotation marks and alterations removed).  Baker's observation that the musical works at issue were created pursuant to a work-for-hire agreements supports Marlo's position. The need to apply the work-for-hire doctrine to resolve the claim indicates that the claim is subject to federal jurisdiction.  See JustMed, Inc. v. Byce, 600 F.3d 1118, 1125 (9th Cir. 2010) (holding that since the application of the work-for-hire doctrine was central to the appeal, the case arose under the federal law governing copyrights). Furthermore, Baker relies in vain on a July 7, 2016 Family Court order.  (Doc. No 312 at 3.)  It has no bearing on the issue of subject matter jurisdiction.  Nor does it render Marlo's claim moot. This order was only a temporary allocation of royalty payments in advance of the upcoming Family Court trial. (Id. at 11 ("Without prejudice [and] subject to reallocation at the time of trial, all royalty payments received by either party for creative work from 1-11-1995 through 4-7-15 shall be shared and paid 50/50").  The Family Court also expressly abstained from determining authorship or copyright ownership.  (Id. at 12 ("It is the specific

intent of the parties that no authorship, and no ownership of copyright is affected by this order.")).  It does not constitute a final order on the issue of authorship or attribution.

**B.  Right to Jury Trial**

1.    As noted above, this action was tried to the Court, over Baker's objection.  (See Doc. No. 338.)  The Declaratory Judgment Act preserves the right to a jury trial for "factual issues ordinarily triable to a jury."  Dickinson v. Gen. Acc. Fire & Life Assur. Corp., 147 F.2d 396, 397 (9th Cir. 1945); 9 Fed. Prac. & Proc. Civ. § 2313 (3d ed.) ("A litigant is not deprived of a jury trial merely because an action in which it is a party is one for a declaratory judgment.  Although the origin of the declaratory judgment procedure largely is in equity, the remedy itself is neither legal nor equitable[.]").  To determine whether the right to a jury trial attaches to a proceeding, the Court must assess whether the claims at issue are legal or equitable in nature.  Siegel v. Warner Bros. Entm't Inc., 581 F. Supp. 2d 1067, 1069 (C.D. Cal. 2008) ("The distinction between the legal or equitable nature of the rights and remedies at issue in the proceeding has become the guidepost for federal courts in determining whether the Seventh Amendment right to trial by jury attached to the proceedings before it."); Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 569 (U.S. 1990) ("The Seventh Amendment question depends on the nature of the *issue* to be tried rather than

the character of the overall action.") (emphasis in original, internal quotation marks removed).  Baker previously argued that because Marlo's counterclaim requires construction of the Copyright Act, her counterclaim is legal in nature and he is thus entitled to a jury trial.  (Doc. No. 338 at 5-6).  While Marlo's counterclaim requires interpretation of the Copyright Act, it is not a copyright infringement claim, nor does Marlo seek compensatory damages.  Courts have not yet reached a definitive answer as to whether a jury trial attaches to claims that simply seek declaratory relief regarding rights associated with copyrighted works.  See, e.g., Chan v. Schatz, 280 F. Supp. 3d 546, 549 (S.D.N.Y. 2017) ("[I]t is unclear whether a party has a right to a jury trial where the only claim is one for a declaratory judgment that a party is the true owner of a copyright."); see also, Berlin v. Club 100, 12 F.R.D. 129, 130 (D. Mass. 1951) ("The general rule in actions for copyright infringement with respect to jury trial may be stated simply: The right exists if the action is one at law, but there is no such right if the action is equitable.").

To determine whether Marlo's counterclaim is legal or equitable, the Court first must compare it "to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  Tull v. United States, 481 U.S. 412, 417–18 (1987).  Second, and more importantly, the Court must "examine the remedy sought and determine whether it is legal or equitable in

nature." <u>Tull</u>, 481 U.S. at 417–18; <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 34 (1989).

First, the Court finds the nature of Marlo's counterclaim to be similar to an action to quiet title – a claim traditionally heard by courts of equity.  <u>See</u> <u>United States v. McHan</u>, 345 F.3d 262, 275 (4th Cir. 2003) (citing cases showing that "claims for the type of relief offered by a quiet title suit have always been equitable actions, brought in the courts of equity rather than courts of law."). Marlo seeks a determination of whether she or Baker has a superior claim to the rights in certain property – here, the intellectual property identified in Exhibit 722.  (Doc. No. 89 at ¶¶3-14).  Just as an owner of real property might bring an action to quiet title to protect her rights from future challenges, Marlo seeks a declaration from the Court to protect against future disputes over her rights to the musical compositions at issue.  <u>See</u> <u>Openwave Sys. Inc. v. Myriad France S.A.S.</u>, No. C 10-02805 WHA, 2011 WL 2580991, at *2 (N.D. Cal. June 29, 2011) (finding that a claim for declaratory relief regarding the assignment of disputed patents – "essentially seek[ing] to quiet title to its intellectual property" – was equitable in nature); <u>see</u> <u>also</u>, <u>Pacific Indem. Co. v. McDonald</u>, 107 F.2d 446, 448 (9th Cir. 1939) (finding that, historically, a claim for declaratory relief was "almost exclusively equitable"); <u>Oddo v. Ries</u>, 743 F.2d 630, 633 (9th Cir. 1984) (finding that a claim for an accounting of profits between co-owners of a copyright was equitable in nature since it derived from

"equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners").

Second, the Court finds that the remedy Marlo seeks is equitable in nature. Marlo does not seek monetary damages; she seeks only declaratory relief for her counterclaim. (Doc. No. 89 at 6 ("Marlo prays for judgment as follows: (1) On Count I of the counterclaims, a declaration that the reported and/or registered writer splits for every composition and sound recording listed in Appendix B to the Complaint [Exhibit 722] are true and correct.")). It is well established that declaratory relief is an equitable remedy. Shubin v. U.S. Dist. Court for S. Dist. of Cal., Cent. Div., 313 F.2d 250, 251 (9th Cir. 1963) (finding that declaratory relief to protect against threatened patent infringement was equitable in nature); Doc's Dream, LLC v. Delores Press, Inc., No. CV 15-2857-R, 2015 WL 12832063, at *1 (C.D. Cal. July 6, 2015) ("Declaratory relief is an equitable remedy available when legal remedies will not suffice."); Robateau v. Wells Fargo Home Mortg., No. CV 15-504-R, 2015 WL 12765587, at *3 (C.D. Cal. May 7, 2015) (same); Munguia v. Wells Fargo Bank N.A., No. 2:15-CV-00582-CAS, 2015 WL 3751811, at *3 (C.D. Cal. June 16, 2015) ("[D]eclaratory relief is an equitable remedy[.]"); Am. Bankers Ins. Co. of Fla. v. Rossoll, No. CV 16-851 PA (JPRx), 2016 WL 7508185, at *2 (C.D. Cal. Apr. 25, 2016) ("[D]eclaratory relief is a remedy based on equitable considerations[.]").

United States District Court
Central District of California

As this case initially involved both legal and equitable claims, the Court is cognizant of the U.S. Supreme Court's general prudential rule regarding such mixed actions set forth in <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500 (1959).  There, the plaintiff sought declaratory relief under the Sherman Antitrust Act, and the defendant filed a counterclaim seeking treble damages under the same act.  <u>Id.</u> at 502-03.  The district court directed the equitable claim for declaratory relief to be tried before the legal issues, limiting the defendant's opportunity to try its legal claims to a jury. <u>Id.</u> at 503-04.  The Supreme Court held that this was error, since the "right to a jury trial of legal issues [cannot] be lost through prior determination of equitable claims."  <u>Id.</u> at 511; <u>but</u> <u>see</u>, <u>Katchen v. Landy</u>, 382 U.S. 323, 339–40 (1966) ("[T]here might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim.").

At the time of trial, Baker had no copyright infringement action against Marlo for the compositions listed in Exhibit 722, because the Court dismissed this claim on March 15, 2018.  (Doc. No. 292 at 59-65).  At the time of trial, the only claim at issue was Marlo's equitable counterclaim.  Accordingly, <u>Beacon Theaters, Inc.</u> does not apply.  <u>MedImmune, Inc. v. Genentech, Inc.</u>, 535 F. Supp. 2d 1020, 1024 (C.D. Cal. 2008) ("[B]ecause Genentech has no damages claim here, it would not be entitled to a jury trial in the first place and the rule of <u>Beacon Theatres</u> is inapplicable."); <u>Big</u>

Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc., 400 F. Supp. 2d 1273, 1276 (D. Kan. 2005) ("[A] jury trial is not warranted unless the legal and equitable claims are asserted in the same case.").

Baker has argued that he should be entitled to a jury trial on Marlo's counterclaim, since in the future he might re-assert a legal claim for damages against Marlo regarding the works in Exhibit 722.  (Doc. No. 338 at 6 ("As the Court may recall, Baker's Copyright Infringement claim against Marlo was dismissed *without prejudice*.  See Order, Doc. 292.  Thus, Marlo now seeks through Declaratory Judgment to extinguish Baker's future ability to bring a Copyright Infringement claim for statutory damages against Marlo.").  This argument is unavailing.  The general rule in Beacon Theaters, Inc. does not require the Court to speculate about hypothetical legal claims not before the Court that could be affected by a non-jury trial on a present equitable claim.  MedImmune, Inc., 535 F. Supp. 2d at 1025 ("The Seventh Amendment does not deal in hypotheticals.  Genentech may not ground its right to a jury trial on speculation as opposed to a present claim for damages."); Partecipazioni Bulgari, S.p.A. v. Meige, No. 86-2516-CIV-RYSKAMP, 1988 WL 113346, at *4 (S.D. Fla. May 23, 1988) (finding an argument "that plaintiffs may be able to use a decision in this (non-jury) case as collateral-estoppel in a later action, which seeks to recover damages, to effectively deny defendants a right to jury trial" to be erroneous).

Indeed, the U.S. Supreme Court has held that an "equitable determination can have collateral-estoppel effect in a subsequent legal action and . . . this estoppel does not violate the Seventh Amendment."  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 335 (1979).

Furthermore, although the Court dismissed Baker's copyright infringement claim without prejudice on the basis that Baker failed to comply with the pre-filing registration requirement, the Court also found that Baker had granted Marlo an implied license in the compositions listed in Exhibit 722.  (Doc. No. 292 at 62-65).  This determination likely forecloses any future claim for copyright infringement Baker could bring against Marlo, no matter how the Court decided Marlo's counterclaim.

**C.  Declaratory Relief**

1.    The elements required to establish a claim for declaratory judgment are (1) a substantial controversy exists (2) between parties having adverse legal interests and (3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941); Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc., 771 F.3d 632, 635 (9th Cir. 2014).

2.    Marlo has satisfied all three elements.  The parties, Marlo and Baker, dispute the attribution of the authorship of certain musical

compositions created as works-for-hire pursuant to contracts entered into between FirstCom and IHP.  Declaratory judgment is warranted to resolve this dispute.

3. The Court declines to award Marlo a judicial declaration that the registered writer splits for the musical pieces "Been a Long Time Coming," "On a Big Ship," "Go All the Way," "Nightbird," "California Baby," "Let Love Unwind," "Keep on Doing," "Kick Up The Sound," "Lay a Little Love On Me," "Gonna Light Your Fire," "Treehouse Hideaway," and "Time to Hit The Road" as listed in Exhibit 722 are correct.  These compositions were part of the project known as "That 70's Record" or "70's Mix Tape," for which Baker was declared the author.  See Baker v. Marlo, No. 16-cv-2313 RGK (JPRx), 2016 WL 10677597, at *5 (C.D. Cal. Sept. 22, 2016), aff'd, 698 F. App'x 381 (9th Cir. 2017).

4. The Court declines to award Marlo a judicial declaration that the registered writer splits for the musical pieces "Bye Bye," "Hangin Out," "Hey Hey Hey," "I'll Be There," "Last Call," "One Step Closer," "She Can Dance," "Shout," "Sun is Shining," "This Is You," "Up," and "Whatever It Takes HM" as listed in Exhibit 722 are correct.  These compositions are part of the project known as "Happy Songs," which mistakenly omitted attributions to other artists who contributed to certain songs.  The evidence adduced at trial supports the following attributions for these compositions:

//

//

//

|  | Marlo | Baker | Stacey | Watson | Hawkes | Trudel | Wagner |
|---|---|---|---|---|---|---|---|
| Bye Bye | 70% | 30% | 0% | 0% | 0% | 0% | 0% |
| Hangin Out | 70% | 30% | 0% | 0% | 0% | 0% | 0% |
| Hey Hey Hey | 33-1/3% | 33-1/3% | 33-1/3% | 0% | 0% | 0% | 0% |
| I'll Be There | 33-1/3% | 33-1/3% | 33-1/3% | 0% | 0% | 0% | 0% |
| Last Call | 25% | 25% | 0% | 25% | 25% | 0% | 0% |
| One Step Closer | 33-1/3% | 33-1/3% | 0% | 0% | 0% | 33-1/3% | 0% |
| She Can Dance | 33-1/3% | 33-1/3% | 0% | 0% | 0% | 33-1/3% | 0% |
| Shout | 70% | 30% | 0% | 0% | 0% | 0% | 0% |
| Sun is Shining | 25% | 25% | 25% | 0% | 0% | 0% | 25% |
| This is You | 70% | 30% | 0% | 0% | 0% | 0% | 0% |
| Up | 33-1/3% | 0% | 0% | 0% | 0% | 33-1/3% | 0% |
| Whatever it Takes HM | 33-1/3% | 0% | 0% | 0% | 0% | 33-1/3% | 0% |

//

//

//

5.  Marlo is hereby awarded a judicial declaration that – except for those compositions discussed in paragraphs II.C.3. and II.C.4. above – the registered writer splits for the compositions listed on Exhibit 722 are correct and accurate.

**IT IS SO ORDERED.**

Dated:  6/27/18

Virginia A. Phillips
Chief United States District Judge