United States District Court
Central District of California

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ~~Alexander Baker,~~ | |
| ~~Plaintiff,~~ | |
| ~~v.~~ | |
| | ~~16-cv-08931 VAP (JPRx)~~ |
| ~~FirstCom Music, a Unit of~~ | |
| ~~Universal Music Z-tones, LLC, et~~ | |
| ~~al.,~~ | |
| ~~Defendants.~~ | |
| | |
| Clara Veseliza Baker, a.k.a. Clair | LA CV 16-08931 VAP (JPRx) |
| Marlo, | |
| Counter-Claimant, | **Order GRANTING in part,** |
| | **DENYING in part, Defendant and** |
| v. | **Counter-Claimant's Motion for** |
| | **Attorneys' Fees and Costs** |
| Alexander Baker, | **(Doc. No. 360).** |
| Counter-Defendant. | |

//

//

//

//

//

//

//

1

On July 19, 2018, Defendant and Counter-Claimant Clara Veseliza Baker, a.k.a. Clair Marlo ("Marlo") filed her Motion for Attorneys' Fees Pursuant to 17 U.S.C. §505 ("Motion").  (Doc. No. 360).  On July 30, 2018, Plaintiff and Counter-Defendant Alexander C. Baker ("Baker") filed his opposition to Plaintiff's Motion.  (Doc. No. 365).  On August 6, 2018, Marlo filed her reply in support of the Motion.  (Doc. No. 366).  On August 14, 2018, Marlo filed a supplement to the Motion.  (Doc. No. 370).

On August 10, 2018, the Court determined that the Motion was appropriate for resolution without hearing pursuant to Fed. R. Civ. P. 78 and Local Rule 7-15, and took the Motion under submission.  (Doc. No. 368). After consideration of the papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion in part, DENIES in part.

## I.    BACKGROUND

On December 2, 2016, Baker field a complaint with this Court against Marlo and Defendants FirstCom Music, a Unit of Universal Music-Z Tunes, LLC's ("FirstCom"); Children's Network, LLC a/k/a Sprout ("Sprout"); Kenneth Nelson, a Senior Vice President and Executive Producer of FirstCom ("Nelson"); Jenifer Carpenter, a Project Manager of Production at FirstCom ("Carpenter"); and Johnson & Murphy Productions, LLC.  (Doc. No. 1).

The complaint foreshadowed the approach Baker would take during the ensuing nineteen months of litigation: it was complex, unnecessarily

United States District Court
Central District of California

acrimonious, and raised numerous novel (but fanciful) legal theories.  Baker

claimed that Marlo, his ex-wife and former music-writing partner, had

engaged in a nefarious "music laundering" scheme with the other

Defendants to infringe upon his copyrights and cheat him out of royalties for

hundreds of songs that he claimed to have created.  Baker brought ten

claims, seven of which named Marlo: (1) Violations of The Racketeer

Influenced and Corrupt Organization Act, 18 U.S.C. 1962(c), ("RICO")

(against FirstCom, Nelson, Carpenter, and Marlo) (Doc. No. 1 at ¶¶301-12);

(2) Conspiracy to Violate RICO (against FirstCom, Nelson, Carpenter, and

Marlo) (id. at ¶¶313-20); (3) Breach of Fiduciary Duty (against FirstCom and

Nelson) (id. at ¶¶321-26); (4) Copyright Infringement (against Sprout and

Johnson & Murphy Productions, LLC) (id. at ¶¶327-29); (5) Copyright

Infringement (against FirstCom, Nelson, and Marlo) (id. at ¶¶330-32); (6)

Fraud (against FirstCom, Nelson, and Marlo) (id. at ¶¶333-38); (7) Fraud

(against Marlo) (id. at ¶¶339-46); (8) Fraud (against Marlo, FirstCom,

Nelson, and Carpenter) (id. at ¶¶347-57); (9) Conversion (against Marlo) (id.

at ¶¶358-65); Conversion (against Marlo) (id. at ¶¶ 366-72).  In addition to

these legal claims, Baker included irrelevant details about his contentious

divorce from Marlo,[1] portrayed Marlo as a grifter who failed to contribute

---

[1] See, e.g., Doc. No. 1 at ¶67 ("In 2006, Ms. Marlo discovered emails indicating
that Mr. Baker was having extra-marital sex.  Mr. Baker admitted having sex
outside the marriage, and vowed to Ms. Marlo to stop doing so, and to work
towards repairing the relationship."); id. at 68 ("As a result of the infidelity, Ms.
Marlo developed a seething and unchangeable hatred of Mr. Baker.  However,
she wished to continue exploiting Mr. Baker's musical talent and work ethic.
Also, Mr. Baker is a kind and loving father to their two children, for example
reading bed time stories every single night for 17 years.  This was Ms. Marlo's
'Revenge Problem.'"); id. at 120 ("Mr. Marlo began telling the couple's two
daughters, ages 11 and 4 at the time, that 'daddy doesn't care if we lose the
house,' 'daddy doesn't care if we sleep on the street.'").

United States District Court
Central District of California

artistically to the couple's songwriting partnership,[2] and branded Marlo and the other defendants as "criminals."[3]

Baker adopted a nasty litigation style from the outset, offering little by way of courtesy or compromise to Defendants, especially Marlo.  For example, after serving the complaint on the Defendants, Baker entered into a stipulation with all Defendants but Marlo to allow them more time to file an answer.  (Doc. Nos. 15, 20).  By contrast, Baker refused Marlo's request for more time to file an answer to his complaint, requiring Marlo to seek ex parte relief from this Court to avoid having to file a response over the Christmas holiday.  (Doc. Nos. 14, 19, 21).

Over the next nineteen months, Baker brazenly ignored the procedural rules that applied to him.  Baker leaned upon his pro se status to get leeway from the Court for failures to file documents on time, failing to give the required notice to Defendants before filing motions, failing to file necessary supporting documents, filing frivolous ex parte applications, and filing

---

[2] See, e.g., Doc. No. 1 at 58 ("Beginning with the very first project for Firstcom in August 1996, and continuing thereafter, Mr. Baker performed approximately 99% of the music work, including composition and production.  At all times, Ms. Marlo performed 100% of the business work, including contract negotiations and conveying authorship information to Firstcom.  Giving up long hours in the home recording studio allowed Ms. Marlo to spend time with the baby, and time in the home office."); id. at ¶62 ("In truth, Mr. Marlo was not functioning as a co-composer, but rather was acting as an agent, successfully connecting the real parties in interest – Firstcom and Alexander Baker.").

[3] See, e.g., Doc. No. 1 at ¶¶3 ("The criminals thereby create plausible explana-tion for the existence of a continual infusion of new music titles, ready to be licensed."); ¶70 ("Ms. Marlo continuously maintained that she was still waiting to 'regain trust' in Mr. Baker, while concealing the seething hatred that would ultimately be the driving motivator behind her ensuing decade of crime.").

documents containing Marlo's unredacted personal information.  The Court admonished Baker for this behavior repeatedly, and after several warnings issued monetary sanctions.  (See, e.g., Doc. No. 255, 230).

At the summary judgment stage, Marlo secured the dismissal of Baker's copyright claim, RICO claims, one of Baker's conversion claims, and one of Baker's fraud claims.  (See Doc. No. 292).  The Court also granted Marlo summary judgment on the issue of liability on her counterclaim for civil extortion.  (Doc. No. 295 at 31-34).

Shortly after the dismissal of the bulk of Plaintiff's claims at the summary judgment stage and after all other Defendants were dismissed from the lawsuit, the Court declined to exercise supplementary jurisdiction over Plaintiff's seventh, eighth, and tenth state court claims for fraud and conversion.  (Doc. No. 329 at 6).  These claims were dismissed without prejudice for re-filing in California Superior Court.  (Id.).

Marlo proceeded to trial on her first counterclaim for Declaratory Judgment.  All evidence presented at trial, with the exception of Baker's self-serving and not fully credible testimony, belied Baker's assertions that he had created the majority of the musical compositions at issue with little to no help from Marlo.  The Court found that of the over 600 musical compositions at issue, Marlo was at least a co-author of all but twelve, and of all but twenty three compositions, the Court held that the registered writer splits were correct and accurate.  (Doc. No. 352).

United States District Court
Central District of California

United States District Court
Central District of California

Marlo now brings this Motion to recover attorneys' fees and costs pursuant to 17 U.S.C. §505.

## II.   ANALYSIS

### A.   Defendant's Failure to Conduct a Local Rule 7-3 Pre-Filing Conference

Baker asserts that Marlo's counsel failed to conduct a pre-filing conference as required by Local Rule 7-3.  (Doc. No. 365 at 5-6).

Local Rule 7-3 requires the moving party to "contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution" at least seven days prior to filing the motion.  L.R. 7-3.  If, after discussing the substance of the contemplated motion, filing a motion is still necessary, the moving party must include a statement in the notice of motion indicating when this conference took place.  Id.  The Court may decline to consider a motion that fails to satisfy these requirements.  L.R. 7-4; see, e.g., Valdovinos v. Cty. of Los Angeles, No. CV 06-7580 JVS (SHx), 2008 WL 2872648, at *2 (C.D. Cal. July 23, 2008) (denying motions in limine for failure to comply with Local Rule 7-3); United Fabrics Int'l, Inc. v. J.C. Penney Corp., Inc., No. CV 08-1936-VBF (PJWx), 2009 WL 10675629, at *1 (C.D. Cal. Apr. 23, 2009) (same).

Baker asserts that the only mention of attorneys' fees came in a July 12, 2018 email discussing to Baker's contemplated Fed. R. Civ. P. 12(b)(1)

motion, where Marlo's counsel stated "[a]dditional meritless motions and other filings on your part will only serve to demonstrate to the court your past and ongoing vexatious behavior to the court, which will most certainly be raised and considered in the context of our client's motion for attorneys' fees."  (Doc. No. 365 at 6).  Other than this mention, Baker asserts that "at no time did Mr. Dinardo [counsel for Marlo] place Baker on notice of any motion for attorney fees, nor did Mr. Dinardo state the substance of any such motion."  (Doc. No. 365 at 6).

In response to Baker's claims, Marlo's counsel Mr. Michael A. DiNardo ("DiNardo") has submitted a declaration attaching the emails that document some of the "ongoing dialogue" he has had with Baker regarding Marlo's attorneys' fees.  (Doc. No. 366-1).  Having reviewed these communications, it appears clear that the parties discussed the possibility of Baker paying Marlo's attorneys' fees as part of a settlement, and the amount sought by Marlo as part of this settlement was close to the amount sought in Marlo's Motion.  (See, e.g., Doc. No. 366-2 at 4 ("As for your proposed settlement related solely to the Declaratory Judgment counterclaim, our client will agree to dismiss her counterclaim without prejudice in exchange for your agreement to . . . . (4) pay our client $270,000.00 as compensation for our attorneys' fees.").  As early as July 2, 2018, Marlo's counsel indicated that if the matter could not be resolved informally, Marlo would seek an award of attorneys' fees from the Court.  (Doc. No. 366-2 at 17 ("We will be proceeding to fine [sic] for a hefty attorneys fee award in the DJ Action."); id. at 20).

United States District Court
Central District of California

The Court finds that Marlo did not fully comply with Local Rule 7-3. While Marlo's counsel has shown that he discussed the possibility of a motion for attorneys' fees and gave Plaintiff some notice about the amount that Marlo would seek in such a motion, he failed to conduct a conference on the specific, underlying legal basis for the Motion as required by Local Rule 7-3.  This Motion and the basis for attorneys' fees were entirely foreseeable, however.  Baker was on notice that Marlo would seek her attorneys' fees for months before she filed the Motion, and he had numerous opportunities to resolve the matter informally.  In the interest of justice, the Court will consider Marlo's Motion.

### B.    The Court Declines to Defer the Attorneys' Fees Award Pending Appeal.

On July 6, 2018, Baker filed his notice of appeal regarding several of this Court's orders.  (Doc. No. 354).  If a motion for attorneys' fees is made in a case for which an appeal has been taken, the Court may in its discretion decline to rule on the Motion and defer ruling until the appeal has been resolved.  See Fed. R. Civ. P. 54, Advisory Committee Notes ("Filing a motion for fees under this subdivision does not affect the finality or the appealability of a judgment. . . .  If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved.").  The Ninth Circuit encourages district courts to rule on attorneys' fees motions notwithstanding an appeal to "prevent postponement of fee consideration until after the circuit court mandate, when the relevant

United States District Court
Central District of California

circumstances will no longer be fresh in the mind of the district judge."
Masalosalo by Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 957 (9th Cir.
1983); see also Boza v. U.S. Bank., N.A., No. LA CV 12–06993 JAK
(FMOx), 2013 WL 5943160, *3 (C.D. Cal. Oct. 28, 2013) ("Thus, the Ninth
Circuit has held that district courts retain discretion during the pendency of
an appeal to consider motions for attorney's fees. . . .  [T]he rule is designed
to promote judicial economy . . . .").  In the interest of judicial economy, the
Court declines to defer decision of this Motion until the appeal is concluded.


### C.   Marlo Is Entitled to Attorneys' Fees Pursuant to 17 U.S.C. § 505

The Copyright Act of 1976, 17 U.S.C. §505, permits the district court to
'award a reasonable attorney's fee to the prevailing party as part of the
costs.'"  Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1120 (9th Cir. 2007)
(quoting 17 U.S.C. § 505).  Local Rule 54-1 states that the prevailing party
is "the party in whose favor judgment is rendered, unless otherwise
determined by the Court."  L.R. 54-1; see, e.g., Buckhannon Board and
Care Home, Inc. v. W. Va. Dep't of Health and Human Servs., 532 U.S. 598,
605-06 (2001) (holding that a prevailing party is one that obtains a judgment
on the merits or a court-ordered consent decree).


"Fees are proper under [§ 505] . . . when either successful prosecution
or successful defense of the action furthers the purposes of the Copyright
Act."  Perfect 10, Inc., 488 F.3d at 1120 (citing Fantasy, Inc. v. Fogerty, 94
F.3d 553, 558 (9th Cir. 1996) ("[A] successful defense of a copyright
infringement action may further the policies of the Copyright Act every bit as
much as a successful prosecution of an infringement claim by the holder of

United States District Court
Central District of California

a copyright")).  Thus, "prevailing defendants as well as prevailing plaintiffs are eligible for such an award, and the standards for evaluating whether an award is proper are the same regardless of which party prevails."  Id. (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)).

The U.S. Supreme Court has held that "district courts are to use their discretion in awarding attorney's fees and costs to the prevailing party" in copyright actions.  Fogerty, 510 U.S. at 524 n. 11.  Exceptional circumstances are not a prerequisite to a fee award under the Copyright Act. Historical Research v. Cabral, 80 F.3d 377, 378 (9th Cir. 1996).  Nor is culpability on the part of the losing party.  See Fogerty, 94 F.3d at 558. Rather, the district court should consider a series of "nonexclusive factors" when evaluating whether to award fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  Fogerty, 510 U.S. at 534 n.19; see also Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't, 447 F.3d 769, 787 (9th Cir. 2006) ("A district court may consider (but is not limited to) five factors in making an attorneys' fees determination pursuant to § 505. These factors are (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence.").  The Court addresses these factors below.

### 1.    Degree of Success on the Merits

Marlo is the prevailing party in this case.  First, Marlo achieved success in obtaining the dismissal of Baker's copyright infringement claim at the summary judgment stage.  Although the Court indicated that it was dismissing the claim without prejudice, the Court went on to find that Baker had granted an implied license for the songs at issue other than those that were dismissed since Baker had already obtained a judgment in another case.  (Doc. No. 292 at 63-65; Doc. No. 302 at 1 ("To the extent that [Baker] has already obtained a judgment against Marlo for the songs included on 'That 70's Record,' he cannot again sue Marlo for copyright infringement of these songs in this case.")).  This finding likely forecloses any possibility that Baker could successfully assert this claim in the future.  (See Doc. No. 352 at 18).  Furthermore, Baker's copyright claim is likely barred by the Court's post-trial finding that Marlo was at least a partial author for all the musical compositions at issue in Baker's copyright claim with the exception of the twelve songs on 'That 70's Record.'  (Doc. No. 352 at 19-21).  For these reasons, the Court finds that Marlo reached a high degree of success as to Baker's copyright infringement claim.

Marlo also achieved success with her claim for Declaratory Judgment.  Marlo sought a declaration that "that she is at least a co-author, if not a sole author, of each of the musical compositions listed in Appendix B [of Baker's Complaint], and that the reported and/or registered writer splits for each musical composition, as among Baker, Marlo, and any other artist listed for a particular composition are true and correct."  (Doc. No. 347 at 4).  Appendix B to Baker's Complaint listed over 600 musical compositions.

United States District Court
Central District of California

(Doc. No. 1 at 74-88).  Of these, the Court found that Marlo was "at least a co-author, if not a sole author" of all but twelve musical compositions.  (Doc. No. 352 at 19-21).  Of all but twenty three of the compositions, the Court held that the registered writer splits were correct and accurate.  (Doc. No. 352 at 21).

Finally, Marlo successful in obtaining the dismissal of several of Baker's copyright-related claims at the summary judgment stage.  These claims included Baker's RICO claims (Doc. No. 292 at 44); Baker's sixth claim for fraud (Doc. No. 292 at 65-70); and Baker's ninth claim for conversion of IHP (Doc. No. 292 at 76-78).  The Court also granted Marlo summary judgment on the issue of liability as to her second counterclaim for civil extortion. (Doc. No. 295 at 31-34).

On May 8, 2018, the Court dismissed Baker's seventh, eighth, and tenth state law claims for fraud and conversion without prejudice to re-filing in California Superior Court.  (See Doc. No. 329 at 6 (declining to exercise supplementary jurisdiction over Baker's surviving state court claims following the Court's summary judgment rulings and the voluntary dismissal of all defendants other than Marlo).[4]  Because the Court did not rule the merits of these claims, and Baker could re-file them in Superior Court, Marlo did not achieve success on these claims.  The Court does not place great

---

[4] The Court also remanded Marlo's second counterclaim for civil extortion; however the Court had already decided that Baker was liable for civil extortion as part of its March 27, 2018 summary judgment order.  (See Doc. No. 329 at 5-6; Doc. No. 295 at 31-34).  The issue of damages is the only issue left to decide on this claim.

weight on these claims for purposes of determining the overall degree of success Marlo achieved in this litigation, however.  See, Shame On You Prods., Inc. v. Banks, 893 F.3d 661, 667 (9th Cir. 2018) ("The focus in the fees determination is whether successful prosecution or successful defense of the action furthers the purposes of the Copyright Act.  Accordingly, the district court did not abuse its discretion in placing greater emphasis on the outcome of the Copyright Act claim.").[5]

For these reasons, the Court finds that Marlo achieved success in this litigation.  Accordingly, this factor weighs in favor of an award of attorneys' fees.

### 2. Frivolousness and the Reasonableness of the Losing Party's Arguments

Another relevant factor in deciding whether to award fees under the Copyright Act is whether the positions advanced by the party against whom fees are sought were frivolous.  See, e.g., Columbia Pictures Television Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1197 (9th Cir. 2001) (noting that frivolousness is a factor to be considered); see also Rosciszewski v. Arete Assoc., Inc., 1 F.3d 225, 233 (4th Cir. 1993).  A finding of frivolousness is not a prerequisite to awarding fees, however.  Fogerty, 94 F.3d at 560 ("[A] finding of . . . frivolousness . . . is no longer required. . . ."); see also Perfect 10, Inc. v. Giganews, Inc., No. CV 11-07098-AB, 2015 WL 1746484, *8 (C.D. Cal. Mar. 24, 2015) ("[T]he fact that Perfect 10's copyright claims were not frivolous when it filed them in 2011 does not undermine the

---

[5] Given Marlo's limited success regarding these claims, Court declines to award attorneys' fees for time spent on these claims.  See Section D.5 below.

United States District Court
Central District of California

Court's ultimate conclusion that attorneys' fees would promote the purpose of the Copyright Act and are appropriate in this case.").  This factor requires the Court to determine whether Baker's copyright claim was objectively unreasonable.  See Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 121-22 (2d Cir. 2001); see also Columbia Pictures Television, 259 F.3d at 1197; Mitek Holdings, Inc. v. Arce Eng'g Co., 198 F.3d 840, 842-43 (11th Cir. 1999) ("The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works'") (quoting Fogerty, 510 U.S. at 527).

Here, the Court concludes that Baker's copyright claim was objectively unreasonable.  Baker argues that since the Court dismissed his copyright claim without prejudice, it was not frivolous.  (Doc. No. 365 at 9)  This ignores the reason why the Court dismissed this claim without prejudice: Baker failed to present evidence that he had registered the majority of the works at issue before filing suit.  (Doc. No. 292 at 62 ("The Court therefore dismisses without prejudice Plaintiff's copyright infringement claim for the works contained in Appendix B – with the exception of those songs on 'That 70s Record' – for failure to satisfy the § 411(a) pre-filing registration requirement."))  Filing a copyright claim without first complying with the preregistration requirement indicates that Baker's copyright claim was not objectively reasonable.  See, Nutrivita Labs., Inc. v. VBS Distribution Inc.,

160 F. Supp. 3d 1184, 1191 (C.D. Cal. 2016), aff'd, 697 F. App'x 559 (9th Cir. 2017) (finding that the failure to comply with the pre-filing registration requirement indicated that the copyright claim at issue "was groundless" and thus the "frivolousness" of the copyright claim supported an award of attorneys' fees ). As discussed above, Baker's argument also ignores (1) the Court's finding that, at the very least, Baker had granted Marlo an implied license for the songs at issue in his copyright claim, and (2) the Court's post-trial finding that Marlo was at least a partial author for all of the musical compositions with the exception of the twelve songs for which Plaintiff had previously obtained a judgment. (Doc. No. 292 at 63-65; Doc. No. 302).[6]

The Court also found many of Baker's copyright-related claims to be without merit.[7] At the summary judgment stage, the Court dismissed Baker's first claim for violation of RICO, finding that none of Baker's evidence in opposition was sufficient to carry his burden of proof regarding

_____

[6] Baker argues that the findings of his purported handwriting expert Beth Chrisman as evidence that his copyright claim was objectively reasonable. (Doc. No. 365 at 8-9). Baker introduced Chrisman's report at the summary judgment stage, but offered no response to Marlo's objections that Chrisman failed to verify Baker's underlying assertions and failed to identify an objective source for her methodology. (Doc. No. 292 at 20). The Court sustained Marlo's objections. (Doc. No. 292). Just before trial, the Court again excluded Chrisman's report for the same reasons. (Doc. No. 329 at 3-4). The blatant defects in Chrisman's excluded report reveal that Baker's position at trial was not objectively reasonable.

[7] The fact that the Court declined to exercise supplementary jurisdiction over several of Plaintiff's claims says nothing about whether these claims were plausible, and thus does not bear on the reasonableness of Baker's claims. See Shame on You Prods., Inc. v. Banks, No. CV 14-03512 MMM (JCx), 2016 WL 5929245, at *7 (C.D. Cal. Aug. 15, 2016), aff'd, 893 F.3d 661 (9th Cir. 2018) ("That the Court did not dismiss the claim with prejudice . . . does not in any way demonstrate the claim was plausible".).

United States District Court
Central District of California

United States District Court
Central District of California

either of Baker's asserted predicate acts: criminal copyright infringement or wire and mail fraud.  (Doc. No. 292 at 46-48).[8]  Baker's second claim for Conspiracy to Violate RICO was dismissed for the same reason.  (Doc. No. 292 at 49).  Baker's sixth claim alleging that Marlo had misled him into believing that he could not sue Sprout for copyright infringement was also dismissed at summary judgment.  (Doc. No. 292 at 65-70).  One reason for its dismissal was because the uncontroverted evidence demonstrated that Baker lacked standing to sue Sprout for copyright infringement.  (Id.).  The Court also granted Marlo summary judgment on Baker's ninth claim for conversion on the basis that Baker had not presented any admissible evidence that Marlo had substantially interfered with his ownership interest in the couple's business.  (Doc. No. 292 at 76-78).

Finally, Baker's position on Marlo's counterclaim was not objectively reasonable.  In the Final Pre-Trial Conference Order, Baker asserted that he would show "[t]hrough his own testimony and that of Billy Trudel", that "Marlo had nothing musically to do with the vast majority of the works, and was more than willing to take credit for herself . . . and to cheat others . . . thus leading to false writer splits."  (Id.).

---

[8] Baker asserts that it is his understanding that the RICO claims were dismissed at Summary Judgment "because the Summary Judgment motions went off essentially unopposed due to Baker's procedural errors, and the procedural errors of Adli Law Group."  (Doc. No. 365 at 10-11, 17-18, ¶8).  While it is true that Baker failed to timely serve and file a statement of genuine issues, the Court carefully considered Baker's declarations and exhibits in support of his opposition briefs.  (Doc. No. 292 at 29-30).

United States District Court
Central District of California

1   Baker's testimony that he did most or all of the work on the compositions

2   at issue was not credible, however.[9]  He also failed to rebut Marlo's

3   evidence that Baker's obsession with other litigation relating to medical and

4   legal malpractice, excessive drug use, claimed disability, and pursuits

5   involving conspiracy theories, forced Marlo to shoulder the bulk of the

6   songwriting duties.[10]  Furthermore, Baker's only witness other than himself,

7   Billy Trudel, declined to testify that Marlo did not contribute artistically to any

8   of the music.  (Doc. No. 352 at 8).

9

10   By contrast, the Court found Marlo's testimony to be credible and

11   supported by "extensive evidence."  (Doc. No. 252 at 8-9).  Based on this

12   evidence, the Court determined that although Marlo and Baker initially

13   contributed equally to composing and producing music, by 2002, Baker's

14   involvement "dwindled to the point where Marlo was solely producing the

15   works."  (Doc. No. 252 at 8).

16

17   For the above reasons, the Court finds that this factor weighs in favor of

18   an award of attorneys' fees to Marlo.

19

20   _____

21   [9] Doc. No. 352 at 8 ("In light of the extensive evidence described above of
     Baker's excessive marijuana use, time spent in drug rehabilitation, and psychi-

22   atric facilities, disability following the ETS, and extensive involvement with other
     interests, the Court finds not credible his testimony that he created most or all

23   of the musical compositions at issue.").

24   [10] Doc. No. 352 at 9 ("[Baker's] attempts to discredit the evidence by claiming,
     for example, that Marlo 'forced' him to write the message admitting his abuse

25   of marijuana and his need for rehabilitation, were not credible."); id. ("Baker
     presented no evidence rebutting the testimony that he devoted a great deal of

26   time to matters other than music production.").

### 3.   Motivation/Bad Faith

Bad faith in asserting a copyright claim, while not a necessary prerequisite to an award of fees, is a factor taken into consideration in evaluating whether a fee award is appropriate.  <u>See</u> <u>Columbia Pictures Television</u>, 259 F.3d at 1197 (noting that motivation is a factor to be considered); <u>Maljack Prod., Inc. v. GoodTimes Home Video Corp.</u>, 81 F.3d 881, 889 (9th Cir. 1996) (same).  A finding of bad faith can be based on both the conduct during the litigation as well as the actions that led to the lawsuit.  <u>Hall v. Cole</u>, 412 U.S. 1, 15 (1973) ("'[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.").

Marlo argues that Baker's bad faith is demonstrated by the manner in which he conducted the litigation.  (Doc. No. 360-1 at 6).  She asserts that "Baker's primary motivation in bringing this and the many other lawsuits that he has filed against her was to harass, control, and ruin Marlo, and run up her legal fees."  (<u>Id.</u> at 6, n. 4).  Marlo points out that Baker, who refers to himself in his court filings as the holder of a juris doctorate degree, filed a notably complex complaint, pursued "unfounded motion/ex parte practice and other frivolous strategies during the course of the litigation," and refused to make any concessions in settlement discussions.  (<u>Id.</u> at 6).

The Court agrees with Marlo that there is evidence that Baker pursued this action in bad faith.  This finding is supported by (1) Baker's pre-lawsuit conduct and (2) Baker's conduct during the course of the litigation.

United States District Court
Central District of California

Before filing suit, Baker threatened legal action not just against Marlo,
but against her employer, FirstCom, if Marlo and FirstCom would not
acquiesce to his demands.  (Doc. No. 295 at 34).  Baker also made efforts
to damage Marlo's reputation by contacting her business contacts, making
unsubstantiated claims against her, and intimating that these third parties
would suffer legal consequences if they did not cooperate with his wishes.
(Id. at 25-28).  These actions led this Court to find Baker liable for civil
extortion at the summary judgment stage.  (Id. at 34 ("Upon review of the
communications in the record, the Court finds that there is no genuine issue
as to any material fact that Plaintiff is liable for civil extortion against Marlo
and FirstCom.").

Throughout the case, Baker made the litigation as complex and
expensive as possible by filing numerous unnecessary motions and
blatantly ignoring the Local Rules and the Court's admonitions.[11]  (See Doc.
No. 360-2 at 3-5, ¶¶8-16 (detailing Baker's over-litigious behavior during the
course of this case)).  Baker was able to avoid the costs of this no-holds-
barred litigation style by representing himself, while Marlo was forced to
incur substantial attorneys' fees.  (See Doc. No. 366 at 6).  (Of course,
Baker's abusive tactics also created a drain on the Court's resources.)

---

[11] See, e.g., Doc. No. 255 ("Plaintiff's disregard of the local rules in this instance
is no isolated event. Plaintiff has been urged numerous times throughout this
case to adhere to the relevant rules, with little effect. [Citations].  Despite the
Court's admonitions and warnings, Plaintiff has continued to take a cavalier
approach to the procedural rules and to this Court's orders.  This has delayed
and complicated this litigation needlessly.").

United States District Court
Central District of California

The Court finds there is evidence that Baker's motivation for filing suit was not a good faith belief in the merits of his copyright claim, but rather an attempt to use the court system to harass his ex-wife.  This factor also weighs in favor of awarding fees.

### 4.   Deterrence

An award of attorney's fees may deter future abusive conduct, and hence this factor weighs in Marlo's favor.  Some courts look to the deterrent effect on the party being ordered to pay fees in assessing this factor.  Courts that focus on "specific deterrence" impose attorneys' fees to deter a party that has engaged in prior acts of infringement or has previously filed non-meritorious actions.  See, e.g., Robinson v. New Line Cinema Corporation, 57 F. Supp. 2d 211, 219 (D. Md. 1999) (denying attorneys' fees in part because there was no need to deter an unsuccessful plaintiff who "did not file his suit frivolously,    . . . waited until securing an expert's opinion as to the similarity of both works [and] sought early resolution of his claims . . . ."); Peer Intern. Corp. v. Luna Records, Inc., 887 F. Supp. 560, 570 (S.D.N.Y 1995) ("In this case, where I have made a finding of willful infringement, which infringement continued for months after the initiation of this action, and where Defendants apparently need to be deterred from future infringement, I find that an award of attorneys' fees is warranted").

Other courts, however, look to "general deterrence," considering whether an award of attorneys' fees will have a positive impact on the behavior of future litigants and potential litigants other than the parties to the case.  See, e.g., Perfect 10, 2015 WL 1746484 at *12 (awarding attorneys'

20

United States District Court
Central District of California

fees because "it will discourage serial litigants from bringing unmeritorious suits and then unnecessarily driving up litigation costs in order to drive a settlement."); <u>AF Holdings LLC v. Navasca</u>, No. C-12-2396 EMC, 2013 WL 3815677, at *3 (N.D. Cal. July 22, 2013) ("[G]iven AF's conduct, there is a strong argument in favor of awarding fees as a deterrent, both with respect to AF and other persons or entities that might contemplate a similar business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements.").

Under either approach, this factor weighs in favor of awarding attorneys' fees.  As discussed above, Baker's copyright claim and related claims were objectively unreasonable and brought in bad faith.  Furthermore, it appears likely that without strong deterrence, Baker will continue his cavalier approach to litigation, as evidenced by the Superior Court for the County of Los Angeles' June 7, 2018 order declaring Baker to be a vexatious litigant. (Doc. No. 360-3 at 3 ("[Baker's] litigation conduct when viewed in its totality shows that he has repeatedly filed unmeritorious motions, pleadings, and other papers, and engages in tactics that are frivolous and solely intended to cause unnecessary delay.")).  Awarding attorneys' fees in this case might well dissuade Baker or other litigants contemplating meritless, bad-faith copyright claims.  <u>See</u> <u>City of Inglewood v. Teixiera</u>, No. CV-15-01815 MWF (MRWx), 2015 WL 6146269, *4 (C.D. Cal. Oct. 8, 2015) ("The Court is also persuaded that a fee award is necessary to deter future meritless litigations of this kind. . . . [D]eterrence is a broad value that is not limited to the individual litigants here.  Indeed, a reasonable award of fees will serve to deter other entities . . . that contemplate bringing unreasonable suits to

United States District Court
Central District of California

pressure an individual into abandoning protected activity."). For this reason, this factor favors an award of attorneys' fees.

### 5.    Overall Goals of the Copyright Act

A final factor to consider – to the extent not subsumed in evaluating the other factors – is whether an award of attorneys' fees would be consistent with the overall goals of the Copyright Act. See AF Holdings LLC, 2013 WL 3815677 at *3 (considering whether an award of attorneys' fees furthered the goals of the Copyright Act); Scott v. Meyer, No. CV 09-6076 ODW (RZx), 2010 WL 2569286, at *4 (C.D. Cal. June 21, 2010) (same).

The Copyright Act's "primary objective is to 'encourage the production of original literary, artistic, and musical expression for the good of the public.'" SOFA Ent., Inc. v. Dodger Prods., Inc., 709 F.3d 1273, 1280 (9th Cir. 2013) (quoting Fogerty, 510 U.S. at 524). Awarding fees to Marlo in this case will reward artists and others who defend against meritless claims, and will encourage artists to continue producing original works without fear of having to defend against baseless claims. Scott, 2010 WL 2569286 at *4 ("Finally, an award of attorney's fees in this case is consistent with the ultimate purposes of the Copyright Act, and therefore appropriate. The successful defense against Plaintiff's copyright infringement claims will assure that Meyer's literary work remains available to the public, thus furthering the goal of 'stimulat[ing] artistic creativity for the general public good' and perhaps 'lead[ing] to further creative pieces.'") (quoting Fogerty, 510 U.S. at 524).

United States District Court
Central District of California

Consequently, the Court finds that awarding fees is consistent with, and will further, the purposes of the Copyright Act.

### 6.    Balancing the Factors

Balancing the factors, the Court concludes that this is an appropriate case in which to award attorneys' fees under the Copyright Act.  Marlo was successful in dismissing Plaintiff's copyright claim at the summary judgment stage, and the Court's post-trial findings of fact on her Declaratory Judgment counterclaim likely foreclosed Baker's copyright claim as meritless.  Plaintiff's copyright claim was objectively unreasonable, and there is evidence Plaintiff brought his lawsuit in bad faith.  Awarding fees will discourage others from filing similarly non-meritorious copyright suits as a means of harassment, if not Baker himself.  All of these conclusions underscore the fact that awarding fees will further the goals of the Copyright Act.  The Court exercises its discretion in favor of an award of attorneys' fees to Marlo.

### D.   Reasonableness of the Requested Attorneys' Fees

Once a party has established that it is entitled to an award of attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (internal quotation marks omitted); see also DuckHole Inc. v. NBCUniversal Media LLC, No. CV-12-10077 BRO, 2013 WL 5797204, at *4 (C.D. Cal. Oct. 25, 2013) (noting that an award of attorneys' fees under the Copyright Act "must be reasonable."). A court may award fees only for the number of hours it concludes were reasonably expended litigating the case.  "Counsel for the prevailing party

should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434.  At the outset, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  "'The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits.'" Common Cause v. Jones, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (quoting Deukmejian, 987 F.2d at 1397).

Here, Marlo seeks to recover $224,122.00 in fees incurred as a result of 628.8 hours expended by her attorney Michael A. DiNardo, a partner at Kelly & Kelley, LLP.  (Doc. No. 360-1 at 14).  Broadly, this amount is the result of:

(1)   460.40 hours at DiNardo's full hourly rate of $380.00 for "regular litigation tasks," for a total of $174,952.00;

(2)   162 hours at DiNardo's discounted hourly rate of $300.00 for routine discovery related tasks, for a total of $48,600.00; and

(3)   6.4 hours at DiNardo's discounted rate of approximately $89.00 for a total of $570.00.

(Doc. No. 360-2 at 5-6, ¶22).

### 1.   Lodestar Method

The Ninth Circuit "requires a district court to calculate an award of
attorneys' fees by first calculating the 'lodestar.'"  Caudle v. Bristow Optical
Co., 224 F.3d 1014, 1028 (9th Cir. 2000); Morales v. City of San Rafael, 96
F.3d 359, 363-65 (9th Cir. 1996) (reversing the district court's fee award
because it failed to calculate a lodestar figure and assess the extent to
which recognized bases for adjusting that figure applied).  "The 'lodestar' is
calculated by multiplying the number of hours the prevailing party
reasonably expended on the litigation by a reasonable hourly rate."
Morales, 96 F.3d at 363; see also Cairns v. Franklin Mint Co., 292 F.3d
1139, 1157 (9th Cir. 2002).  It incorporates consideration of the results
obtained, as required by Hensley, 461 U.S. 424, and other relevant factors
as well.  Morales, 96 F.3d at 363 n.8.  When calculating the lodestar, courts
do not necessarily use the actual rate charged by a party's attorney.
Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1985)
("Determination of a reasonable hourly rate is not made by reference to
rates actually charged the prevailing party.").  Rather, "[i]n determining a
reasonable hourly rate, the district court should be guided by the rate
prevailing in the community for similar work performed by attorneys of
comparable skill, experience, and reputation."  Chalmers, 796 F.2d at 1210-
11; see Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984) (the requested
rates must be "in line with those prevailing in the community for similar
services by lawyers of reasonably comparable skill, experience, and
reputation.").  Once it has determined a reasonable hourly rate, the Court
must determine the number of hours reasonably spent on the litigation.  See

25

United States District Court
Central District of California

Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting Hensley, 461 U.S. 424).

After computing the lodestar, the Court must assess whether additional considerations require adjustment of the figure, such as novelty and complexity of the issues, the specific skill and experience of counsel, the quality of representation, and the results obtained.  See Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975); Morales, 96 F.3d at 363-64 n.8.

### 2.    Whether the Requested Hourly Rates are Reasonable

The Court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services.  See Bell v. Clackamas Cty., 341 F.3d 858, 868 (9th Cir. 2003); Jordan v. Multnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987).  The party requesting fees bears the burden of adducing evidence that the requested rates are in line with prevailing rates for lawyers of reasonably comparable skill and reputation in the community.  Jordan, 815 F.2d at 1263.  The relevant community is the district in which the Court sits.  See Schwartz v. Secretary of Health and Human Serv., 73 F.3d 895, 906 (9th Cir. 1995).

Declarations from local attorneys who practice in the same area of law regarding the prevailing market rate in the community suffice to establish a reasonable hourly rate.  See Widrig v. Apfel, 140 F.3d 1207, 1209-10 (9th Cir. 1998); Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys in the

26

Case 2:16-cv-08931-VAP-JPR   Document 371   Filed 08/31/18   Page 27 of 40   Page ID
#:8340

community can provide adequate proof of the reasonableness of counsel's rates).

Although several attorneys worked on this matter on Marlo's behalf, Marlo only seeks reimbursement for one: DiNardo.[12]  DiNardo is a partner at Kelly & Kelley, LLP with over twenty years of experience.  (Doc. No. 360-2 at 5, ¶21).  To support the reasonableness of his hourly rate, DiNardo submitted a report from the American Intellectual Property Law Association. (Doc. No. 360-3).  This report presents national data regarding hourly rates charged by attorneys for the year 2016.  (Id.).  DiNardo's requested hourly rate of $380.00 per hour is below the national average hourly rate for partners in private law firms practicing intellectual property law.  (Doc. No. 360-2 at 6, ¶25; Doc. No. 360-3 at 30-31).  DiNardo's discounted rate for tasks he deemed more appropriate for associate attorneys is also below the national average hourly rates charged by associates at private firms.  (Doc. No. 360-3 at 30).  Since the report shows that the rates for attorneys in the Los Angeles area tend to be higher than in other locations, DiNardo's rates are likely to be even lower than the rates charged by local attorneys with similar levels of experience practicing in the same area of law.  (See Doc. No. 360-3 at 31).  This is confirmed by other cases where courts have found much higher hourly rates reasonable for similarly-situated attorneys practicing in this district.  See, e.g., Perfect 10 Inc., 2015 WL 1746484 at

---

[12] For example, John Kelly, DiNardo's partner at Kelly & Kelly, LLP, spent approximately thirty hours working on this case, but did not bill for this time.  (Doc. No. 360-2 at 6, ¶24; see also, Doc. No. 365 at 11 (listing various individuals part of Marlo's "army of attorneys" who assist Marlo on different aspects of the parties' ongoing litigation)).

United States District Court
Central District of California

*15-16 (finding "reasonable and comparable" hourly fees for partners

ranging from $610 to $930); <u>DuckHole</u>, 2013 WL 5797204 at *5 ("Mr. Weiner

billed himself . . . at $580 an hour. . . .  His third year associate Mr.

Christopher Carter . . . was billed at $380 [per hour] . . . . The Court finds

that the hourly rates charged by Mr. Weiner and Mr. Carter fall within the

range of rates charged by similarly situated attorneys in the Los Angeles

area."); <u>Browne v. Am. Honda Motor Co., Inc.</u>, No. CV 09-06750 MMM, 2010

WL 9499073, *7 (C.D. Cal. Oct. 5, 2010) ("Billing rates for lawyers two years

out of school range from $200 to the high $400 range").

Baker offers no opposition to the rates charged by Marlo's counsel.  In

fact, the rates charged the attorneys Baker retained in this case (and who

he fired three days after the Court granted their request to appear on his

behalf) appear to have higher rates than DiNardo.  (<u>See</u> Doc. No. 365 at 54;

Doc. No. 182; Doc. No. 202).

For these reasons, the Court finds the hourly rates sought by Marlo's

counsel in this Motion are reasonable.

### 3.    The Number of Hours Expended By DiNardo Was Reasonable

"A district court should exclude from the lodestar amount hours that are

not reasonably expended because they are 'excessive, redundant, or

otherwise unnecessary.'"  <u>See</u> <u>Van Gerwen</u>, 214 F.3d 1041, 1045 (9th Cir.

2000) (quoting <u>Hensley</u>, 461 U.S. 424).

28

United States District Court
Central District of California

Here, Marlo seeks an attorneys' fee award based on 628.8 hours of DiNardo's time.  (Doc. No. 360-1 at 14-15).  Furthermore, following a review of DiNardo's time records, the Court finds that this figure is not based on "excessive, redundant, or unnecessary" tasks.  This case took over nineteen months from the filing of Baker's complaint to the entry of judgment.  It involved numerous defendants, ten complex and at times novel claims from Baker, and counterclaims from both Marlo and the other defendants.  The interplay with this case and other cases Baker filed against Marlo added to the complexity.  Most importantly, Baker's abusive litigation tactics called for much more time than would otherwise have been necessary.  Communities for Equity v. Mich. High Sch. Athletic Assoc., No. 1:98-CV-479, 2008 WL 906031, at *16 (W.D. Mich. Mar. 31, 2008) ("[A party] cannot choose to 'litigate tenaciously and then be heard to complain about the time necessarily spent by [the other party] in response.'  The time required to litigate increases when the [a party] bitterly contests the case, forcing the [other party] to win their victory from 'rock to rock and from tree to tree.'") (quoting City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986) and Lipsett v. Blanco, 975 F.2d 934, 939 (1st Cir. 1992).

For these reasons, the Court finds the 628.8 hours spent by DiNardo in the course of his representation of Marlo was reasonable.

### 4.      All Non-Copyright Claims Are Related to Baker's Copyright Claim.

When fees are awarded under the Copyright Act, the prevailing party may recover fees associated not only with the copyright claim but also with the litigation of related non-copyright claims.  Mattel, Inc. v. MGA Entm't,

United States District Court
Central District of California

Inc., No. CV 04-9049 DOC (RNBx), 2011 WL 3420603, at *6 (C.D. Cal. Aug. 4, 2011), aff'd sub nom. Mattel, Inc v. MGA Entm't, Inc., 705 F.3d 1108 (9th Cir. 2013) ("MGA is entitled to recover the fees it incurred in defending against claims that 'involve[d] a common core of facts or [were] based on related legal theories.'") (quoting The Traditional Cat Ass'n v. Gilbreath, 340 F.3d 829, 833 (9th Cir. 2003)); see also Thomas v. City of Tacoma, 410 F.3d 644, 649 (9th Cir. 2005) ("To the extent the claims are related, Plaintiff should recover reasonable fees for prosecuting those claims"); The Traditional Cat Ass'n, 340 F.3d at 833 (stating that "a party entitled to attorney's fees as a prevailing party on a particular copyright claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any related claims," and remanding for a district court to determine whether the non-copyright claims were related).

"To determine whether the claims are related, the district court should focus on whether the claims on which [defendants] did not prevail 'involve a common core of facts or are based on related legal theories.'" Thomas, 410 F.3d at 649 (quoting Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis in original)).  The Court finds that each of the claims Baker brought against Marlo involved a common core of facts as Baker's copyright infringement claim.

At the outset of the litigation, Baker styled his lawsuit as a sprawling set of interrelated claims that together comprised a "Music Laundering" scheme orchestrated by Marlo and other defendants to cheat Baker out of certain

rights he purportedly held in numerous musical compositions from 2007 to the present.  (See generally, Doc. No. 1).  Baker brought ten claims, seven of them naming Marlo.  (Id.).

Baker's first and second claims for violation of RICO and conspiracy to violate RICO were premised in part upon Baker's allegation that Marlo had committed criminal copyright infringement.  (Doc. No. 1 at ¶303 ("The RICO Music Laundering Enterprise consists of Firstcom Music, Ken Nelson, Jenifer Carpenter and [Marlo], associated together in fact by their common purpose of Music Laundering, i.e. obtaining copyrighted musical works through false promises and contract forgery, then realizing financial gain by selling commercial licenses to unsuspecting good-faith purchasers."); id. at ¶ 314; Doc. No. 292 at 44).

In his sixth claim for fraud, Baker alleged that Marlo defrauded him by preventing him from bringing a copyright infringement suit against Children's Network, LLC, a.k.a. Sprout.  (Doc. No. 1 at ¶¶334-38).  This claim was dismissed on numerous grounds at the summary judgment stage, including Baker's lack of standing.  (Doc. No. 292 at 65-70).

Baker's seventh claim for fraud alleged that Marlo lied to Baker about whether she fairly represented Baker's interest when entering into work-for-hire contracts for production music with defendant FirstCom Music.  (Doc. No. 1 at ¶¶339-346).

United States District Court
Central District of California

1    Baker's eighth claim for fraud alleged that Marlo misled Baker into

2  believing that she would accurately convey information about author

3  attribution for the couple's production music in dealings with FirstCom

4  Music.  (Doc. No. 1 at ¶¶347-57).

5

6    In his ninth claim for conversion, Baker alleged that Marlo interfered with

7  Baker's ownership stake in the couple's production music company from

8  2007 to the present.  (Doc. No. 1 at ¶¶358-65).

9

10    Baker's tenth claim for conversion alleged the Marlo improperly took

11  possession of the couple's recording studio and the hard drives containing

12  Baker's music.  (Doc. No. 1 at ¶¶366-72).

13

14    Marlo's counterclaims also arose from the same set of facts and

15  circumstances as Baker's copyright claim.  Marlo's first counterclaim sought

16  a declaration that she was at least a co-author, if not the sole author, for

17  each of the musical compositions listed in Appendix B to Baker's Complaint

18  and that the reported and/or registered writer splits for each were true and

19  correct.  (Doc. No. 347 at 4).[13]  Marlo's second counterclaim for civil

20  extortion was related to Baker's abusive actions before bringing the above-

21  captioned case.  (Doc. No. 89 at ¶¶15-20).  Marlo alleged that Baker

22  extorted Marlo with the aim of obtaining Marlo's rights and royalties for the

23  music at issue in his copyright claim.  (Doc. No. 1 at ¶17).

24

25  _____

26  [13] The Court also previously found that Marlo's Declaratory Judgment counterclaim
arose under federal copyright laws.  (See Doc. No. 352 at 10-12).

United States District Court
Central District of California

1    Since each of the non-copyright claims in this lawsuit are related to the

2    same set of facts and circumstances as Baker's copyright claim, the Court

3    declines to apportion fees on the basis that they are unrelated.

4

5    **5.    The Court's Dismissal Without Prejudice of Baker's Seventh, Eighth, and Tenth Claims Warrants Adjustment of Marlo's Fee Award**

6    The Court is required to apportion fees where a fee petitioner achieves

7    only limited success.  Hensley v. Eckerhart, 461 U.S. 424, 424 (1983);

8    Ryan, 786 F.3d at 764–65 ("The district court certainly was permitted, and in

9    fact required, to analyze whether Ryan achieved only limited success in the

10   underlying litigation and how her requested fee award should be reduced to

11   account for her limited degree of success.").

12

13   After the dismissal of Baker's copyright claims, numerous other claims,

14   and the dismissal of all other remaining defendants from this lawsuit, the

15   Court found that the remaining state claims predominated over the sole

16   remaining federal claim (Marlo's Declaratory Judgment counterclaim).  (See

17   Doc. No. 329 at 4-6).  For this reason, the Court declined to exercise

18   supplementary jurisdiction over Baker's seventh, eighth, and tenth claims

19   and dismissed them without prejudice to refiling in Superior Court.  (Id.).

20   Since Marlo did not prevail on the merits of Baker's seventh, eighth, and

21   tenth claims, the Court declines to award Marlo attorneys' fees for time

22   spent on these claims.

23

24   There is no precise method for apportioning fees to account for a

25   litigant's limited degree of success.  The Traditional Cat Ass'n, Inc., 340 F.3d

26

United States District Court
Central District of California

at 834–35 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."); Ryan, 786 F.3d at 764–65 ("There is no precise formula or methodology that the district court is obligated to follow.).  Here, the interrelated nature of Baker's claims makes it impractical to identify specific hours in Marlo's counsel's time records for elimination from the fee award.  See Doc. No. 366 at 9 ("[A] review of the detailed time records demonstrates that there was no time dedicated solely to any of the state law claims that wasn't also applicable to one of the federal claims arising under the Copyright Act."); Doc. No. 360-2 at 3, ¶6. ("Baker's other claims were ultimately dismissed and any work performed in connection with the same overlapped with work performed on other claims . . . .").  After a careful review of Marlo's counsel's time-records, the Court finds that a ten percent reduction in the attorney fee award is an equitable apportionment to account for time spent on Baker's seventh, eighth, and tenth claims.  See Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 906 (9th Cir. 1995) ("The Court is not required to set forth an hour-by-hour analysis of the fee request . . . the district court has the authority to make across-the-board percentage cuts either in the number of hours claims or in the final lodestar figure as a practical means of trimming the fat from a fee application.") (internal quotation marks the citations removed).  Accordingly, the Court reduces Marlo's requested attorneys' fees by $22,412.20.

### 6. Attorneys' Fees for Time Spent on Marlo's Fee Petition

"'In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable.'" Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 981 (9th Cir. 2008) (quoting In re Nucorp Energy, Inc., 764 F.2d 655, 660 (9th Cir. 1985)). An award for "fees on fees" should be adjusted to account for the petitioner's degree of success in obtaining attorneys' fees, however. See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n. 10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); Prunty v. Vivendi, 195 F. Supp. 3d 107, 117 (D.D.C. 2016) (reducing "fees-on-fees award to reflect [d]efendants' degree of success on their fee petition" by applying the same percentage reduction that was apportioned from the attorneys' fees request).

Here, Marlo seeks to recover a total of $8,740.00 for twenty three hours of DiNardo's time spent preparing the initial moving papers (seventeen hours) and reply papers (six hours) for Marlo's attorneys' fee request at DiNardo's rate of $380.00. (Doc. No. 366 at 10; Doc. No. 366-1 at 4, ¶14).[14] The Court finds these hours and DiNardo's rate to be reasonable in this case. Since the Court has reduced the attorneys' fees by ten percent, however, the Court applies the same apportionment for the amount requested for "fees on fees." Accordingly, the Court awards Marlo $7,866.00 for time spent preparing Marlo's fee request.

---

[14] DiNardo has excluded 1.9 hours of his time spent on Marlo's Motion from Marlo's fee request. (Doc. No. 366 at 10; Doc. No. 366-1 at 4, ¶14).

### 7.    Conclusion Regarding Amount of Fees

Based on the above, the Court calculates the appropriate lodestar figure amount to be $224,122.00.  After reducing this figure by ten percent to account for those claims dismissed without a finding on their merits, the Court finds that Marlo is entitled to $201,709.80 in attorneys' fees for DiNardo's work throughout this litigation.  The Court finds that Marlo is entitled to $7,866.00 for preparation of Marlo's fee request.  In total, the Court awards Marlo $209,575.80 in attorneys' fees.

## E.   Costs

The Court is permitted, at its discretion, to "allow the recovery of full costs" to a party to a federal copyright action.  17 U.S.C. § 505.  The Ninth Circuit has interpreted § 505 to allow the recovery of both taxable and non-taxable costs.  Oracle USA, Inc. v. Rimini St., Inc., 879 F.3d 948, 966 (9th Cir. 2018) ("[B]ecause 17 U.S.C. §505 permits the award of full costs, the award of costs under §505 is not limited to the categories of costs described in 28 U.S.C. §1920); Twentieth Century Fox Film Corp. v. Entertainment Distrib., 429 F.3d 869, 885 (9th Cir. 2005) ("Construing § 505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word 'full' out of the statute. . . . . Thus, we hold that district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under § 505.").

Here, Marlo seeks a total of $10,235.90 in costs.  (Doc. No. 360-1 at 18; Doc. No. 360-2 at 7, ¶¶27-28; Doc. No. 370 at 2; Doc. No. 370-1 at 2, ¶3). These costs include expert witness fees, document management service

United States District Court
Central District of California

expenses, shipping costs, messenger service expenses, court transcript costs, the costs associated with taking Baker's deposition, and parking costs.  (Id.; Doc. No. 370 at 2).  Marlo's counsel has filed a declaration stating that all of these costs were reasonably incurred in the ordinary course of litigating this case.  (Doc. No. 360-2 at 7, ¶27; Doc. No. 370-1 at 2, ¶4).  Baker has offered no specific objection to Marlo's request for costs.

First, Marlo seeks reimbursement of $2,100.00 in expert witness fees.  (Doc. No. 360-1 at 18; Doc. No. 360-2 at 7, ¶¶27-28).  Marlo's expert was needed to respond to Baker's claim that his signatures on various work-for-hire contracts related to musical compositions involved in this lawsuit were forgeries.  (Doc. No. 360-2 at 7, ¶28).  The Ninth Circuit has found that "full costs" includes expert witness fees.  Kourtis v. Cameron, 358 F. App'x 863, 868 (9th Cir. 2009) (unpublished disposition); see also, Wyatt Tech. Corp. v. Malvern Instruments, Inc., No. CV 07-8298 ABC (RZx), 2010 WL 11404472, at *4 (C.D. Cal. June 17, 2010), aff'd, 526 F. App'x 761 (9th Cir. 2013) ("Although the court in [Twentieth Century Fox Film Corp., 429 F.3d 869] did not discuss expert witness fees specifically, the clear implication of the decision is that the term 'full costs' does, in fact, include expert witness fees.").  The Court finds that these costs are reasonable, and grants Marlo's request as to these costs.

Next, Marlo requests $4,935.60 in costs she incurred by retaining LogikCull online document management services.  (Doc. No. 360-2 at 7, ¶¶27-28).  Reasonable costs related to electronic discovery are compensable pursuant to 17 U.S.C. § 505.  See, e.g., Perfect 10, Inc. v.

37

Giganews, Inc., No. CV 11-07098 AB (SHx), 2015 WL 1746484, at *28 (C.D.
Cal. Mar. 24, 2015), aff'd, 847 F.3d 657 (9th Cir. 2017) (including cost of
electronic discovery reasonably necessary to the litigation in award pursuant
to 17 U.S.C. §505).  These services were necessary to manage the
documents implicated by the scope and breadth of the documents
implicated in Baker's complaint.  (Doc. No. 360-2 at 7, ¶¶27-28).
Accordingly, the Court grants Marlo's request as to these costs.

Marlo also seeks reimbursement for $1,749.00 for messenger services,
$95.43 in shipping costs, $15.27 for flash drives needed for document
production.  (Doc. No. 360-1 at 18; Doc. No. 360-2 at 7, ¶27).  These costs
are compensable costs pursuant to the Copyright Act. See, e.g., Gable v.
Nat'l Broad. Co. ("NBC"), No. CV 08-4013 SVW (FFMx), 2010 WL
11506430, at *13 (C.D. Cal. Aug. 6, 2010) (holding that "messenger, courier,
and overnight mail costs . . . . ordinarily incurred by the attorney and billed
to the client are recoverable under [17 U.S.C. § 505].").  The Court
determines that these costs are reasonable, and grants Marlo's request as
to these costs.

Marlo requests $1,225.20 for the costs associated with taking Baker's
deposition.  (Doc. No. 370-1 at 2, ¶¶3, 6-8). Deposition expenses are
recoverable pursuant to 17 U.S.C. §505.  Perfect 10, Inc. v. Giganews, Inc.,
No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *6 (C.D. Cal. Mar. 24,
2015), aff'd, 847 F.3d 657 (9th Cir. 2017).  Here, it was particularly
necessary to videotape this deposition given Baker's abusive litigation

tactics.  (Doc. No. 370-1 at 2, ¶¶6-8).  Accordingly, the Court approves Marlo's request for deposition costs.

Marlo seeks $71.40 for the cost of a transcript of the April 2, 2018 pre-trial conference.  (Doc. No. 370-1 at 2, ¶¶3,5; Doc. No. 370-2 at 2-4).  The Court may award transcript costs as part of an award pursuant to 17 U.S.C. § 505.  See, e.g., Landsberg v. Scrabble Crossword Game Players, Inc., No. 76-2844-LEW, 1980 WL 2238, at *6 (C.D. Cal. Dec. 2, 1980), vacated on other grounds, 736 F.2d 485 (9th Cir. 1984); Video-Cinema Films, Inc. v. Cable News Network, Inc., No. 98 CIV.7128 BSJ, 2004 WL 213032, at *9 (S.D.N.Y. Feb. 3, 2004).  Marlo required a transcript of this hearing to have a record of the Court's rulings and Baker's statements in advance of the trial on Marlo's Declaratory Judgment counterclaim.  (Doc. No. 370-1 at 2, ¶5).

Marlo also seeks reimbursement for $44.00 in parking costs.  (Doc. No. 360-1 at 18; Doc. No. 360-2 at 7, ¶27).  Parking costs may be awarded pursuant to 17 U.S.C. § 505.  See, e.g., Microsoft Corp. v. Tech. Enterprises, LLC, No. 06-22880-CIV, 2011 WL 13174758, at *5 (S.D. Fla. Sept. 7, 2011) (recommending an award of costs that including parking costs); Perfect 10, Inc., 2015 WL 1746484, at *6 ("[A]llowable costs under section 505 include . . . travel costs.").  The Court grants Marlo's request as to these costs.

For the reasons above, the Court GRANTS Marlo's request for $10,235.90 in costs.

## III.    CONCLUSION

For the reasons discussed above, the Court grants Marlo's Motion in part.  Attorneys' fees are awarded to Defendant in the amount of $209,575.80 and costs are awarded to Marlo in the amount of $10,235.90 for a total of $219,811.70 against Baker.

**IT IS SO ORDERED.**

Dated:    8/31/18

Virginia A. Phillips
Chief United States District Judge

United States District Court
Central District of California